Opinión de conformidad emitida por
la Juez Asociada Se-ñora Rodríguez Rodríguez,
a la que se une el Juez Pre-sidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.
El recurso de autos nos permite expandir nuestros pro-nunciamientos respecto a la figura del contrato de opción. En particular, hoy examinamos si las partes del contrato de opción pueden establecer en qué forma se ejercerá el derecho de opción. Siguiendo el principio de la autonomía de la voluntad contractual, estimo que los contratantes pueden acordar, además del plazo en el cual se podrá ejer-cer la opción, la forma como deberá ejercerse, apartándose de la figura tradicional que sólo requiere la mera declara-ción de la voluntad para el efectivo ejercicio de la opción.
I
El 21 de marzo de 2006, los Sres. Pedro Matos Lorenzo y Carmelo Rivera Tirado suscribieron un contrato de op-ción a compra sobre una propiedad comercial, fijando el precio de venta en $130,000. Mediante ese contrato, el se-ñor Rivera Tirado concedió al señor Matos Lorenzo el de-recho de opción por un término de treinta días, es decir, hasta el 20 de abril. Este último pagó una prima de $3,000, los cuales serían restados al precio de venta una vez se ejercitara el derecho de opción. Las cláusulas y condiciones acordadas por las partes, que generan la controversia que hoy atendemos, disponen:
*837 PRIMERA: Que LA PARTE VENDEDORA se obliga a darle la primera opción de la propiedad descrita ..., estipulándose el precio de venta en la cantidad de [$130,000.00].
TERCERA: Que las partes acuerdan que la cantidad de [$130,000.00], será pagada de la siguiente manera: en el día de hoy se hace entrega de la cantidad de [$3,000.00] como opción, y el remanente de [$127,000.00] se pagarán en o antes de treinta (30) días a partir del día de hoy.
QUINTA: En caso de incumplimiento o que no se puedan firmar las debidas escrituras, por causa o negligencia de LA PARTE OPTANTE, éstos perderán la opción entregada en el día de hoy. En caso de que LA PARTE VENDEDORA se viera imposibilitada de firmar la escritura, viene obligada la parte vendedora a devolver la opción entregada a LA PARTE OPTANTE.
SEXTA: De vencerse el término de esta opción y no firmarse la escritura, este contrato quedará nulo y LA PARTE VENDE-DORA queda en libertad de vender la propiedad a otro posible comprador. Apéndice de la Petición de certiorari, pág. 39.
Tras firmar el contrato, el señor Matos Lorenzo y su esposa, la Sra. Antonia González García, iniciaron gestio-nes en una institución bancaria para obtener el financia-miento de la compraventa. Aunque la referida institución aprobó la solicitud del préstamo el 5 de abril de 2006, su tramitación se extendió por varias semanas. Finalmente, el banco notificó a ambas partes que el cierre de la compra-venta y la concesión del préstamo se realizarían el 22 de abril de 2006. No obstante, el señor Rivera Tirado (optata-rio-vendedor) no se presentó a efectuar la transacción. En cambio, el 3 de mayo de 2006, éste vendió la propiedad a un tercero: la Sra. Amérilis Navedo Dávila.
Así las cosas, el señor Matos Lorenzo y la señora Gon-zález García, junto a su Sociedad Legal de Gananciales, presentaron ante el Tribunal de Primera Instancia urna de-manda sobre incumplimiento de contrato y daños y perjui-cios contra el señor Rivera Tirado y la Sra. Olga Freytes Borrero, así como la Sociedad Legal de Gananciales com-puesta por ellos. En síntesis, la parte demandante adujo *838 que tras suscribir un contrato de opción de compra con el demandado, antes de vencer el plazo acordado en la opción, le notificó que deseaba comprar la propiedad. Asimismo alegó que los demandados conocían de sus gestiones para obtener el financiamiento de la compraventa y que, tanto el banco como los demandantes, le notificaron la aproba-ción del préstamo el 5 de abril de 2006.
Por otro lado, los demandantes sostuvieron que mien-tras tramitaban el préstamo con el banco, este le informó a los demandados que la institución tendría que retener cierta cantidad del precio de compraventa para saldar una deuda contributiva. Ello provocó, según se alegó en la de-manda, que los demandados expresaran que preferían vender la propiedad a otra persona que hiciera el pago en efectivo.
Tras celebrar un juicio en su fondo, el Tribunal de Pri-mera Instancia emitió una sentencia para desestimar la acción presentada. Determinó que cuando venció el plazo de treinta días concedido en el contrato de opción, el 20 de abril de 2006, los demandantes no estaban listos o dispues-tos para llevar a cabo la compraventa, ni habían acordado con los demandados una extensión al contrato de opción. Igualmente determinó que, al 20 de abril, la institución financiera aún no había recibido varios documentos indispensables para otorgar el préstamo. Por todo ello, el foro primario estimó que los demandados podían oponerse a la celebración de la compraventa y podían vender su propie-dad a cualquier otro comprador, como en efecto lo hicieron el 3 de mayo de 2006.
De esta determinación los demandantes acudieron al Tribunal de Apelaciones. Allí solicitaron la revocación de la sentencia del foro primario ya que, según alegaron, erró al “concluir que el perfeccionamiento de un contrato de opción de compraventa está sujeto al otorgamiento del contrato de compraventa y no a la afirmación por parte del optante de que se perfeccione el contrato de opción de compraventa”. *839 Alegato de oposición, pág. 8. El foro apelativo intermedio revocó la sentencia recurrida y devolvió el caso al Tribunal de Primera Instancia. Aquél concluyó que, dejando a un lado el asunto sobre si el contrato de compraventa se per-feccionó en el plazo, era necesario que el foro primario ad-judicara si los demandantes habían ejercido su derecho de opción en el término de treinta días que le fuera concedido según el contrato de opción.
Siguiendo el mandato del Tribunal de Apelaciones, y tras brindar a las partes la oportunidad de presentar evi-dencia adicional, el Tribunal de Primera Instancia emitió una nueva sentencia para declarar “sin lugar” la demanda. En su dictamen, el cual mantuvo todas las determinacio-nes de la primera sentencia, aclaró que los demandantes no ejercieron su derecho de opción mediante actos afirma-tivos en el término pactado. La sentencia se notificó el 30 de julio de 2009.
Inconformes aún, el 28 de agosto de 2009, los deman-dantes presentaron nuevamente un recurso de apelación ante el Tribunal de Apelaciones, en el cual reiteraron el error señalado en la apelación original y adujeron haber manifestado su intención de efectuar la compraventa en el plazo concedido. Por su parte, los demandados se opusie-ron al recurso y alegaron que los demandantes no realiza-ron actos afirmativos ni ejercieron su derecho de opción según los términos del contrato.
Atendidos los argumentos de las partes, el Tribunal de Apelaciones “modificó”(1) el dictamen recurrido mediante sentencia notificada el 25 de febrero de 2010. Este expresó que el derecho de opción se ejerce con la simple manifesta-ción por el optante de su intención de perfeccionar el con-trato de compraventa, por lo cual es innecesario que la transacción definitiva se consuma dentro del plazo conce- *840 dido para ejercer la opción. Por ello, y por entender que los demandantes sí habían comunicado a los demandados su interés de adquirir la propiedad objeto de la opción en los treinta días concedidos en el contrato, y que estos conocían de sus gestiones para obtener el financiamiento de la com-praventa, el foro apelativo intermedio concluyó que los de-mandantes habían ejercido su derecho de opción a tiempo y los demandados habían violado el contrato de opción. Cón-sono con lo anterior, el tribunal devolvió el caso al foro primario para que este fijara los daños sufridos por los demandantes ante el incumplimiento contractual de los demandados.
El 26 de marzo de 2010 acudió ante esta Curia la parte demandada mediante recurso de certiorari. Allí alegó que no incumplió el contrato de opción, ya que mantuvo la pro-piedad fuera del mercado por un término de treinta días y no fue hasta vencido ese plazo, sin que la parte recurrida ejerciera su derecho de opción según fuera pactado, cuando entonces decidió vender el inmueble a un tercero. Añadió que “estamos ante un contrato de opción de compra con unas cláusulas restrictivas que establecen la forma en que se puede ejercitar la opción”. Petición de certiorari, pág. 9. De otra parte, los peticionarios sostienen que los recurri-dos no realizaron actos afirmativos para ejercer su derecho de opción y que el Tribunal de Apelaciones erró al interve-nir con las determinaciones de hechos del Tribunal de Pri-mera Instancia.
Visto el recurso, el 15 de octubre de 2010, le concedimos a la parte recurrida un término para que mostrara causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia emitida por el Tribunal de Apelaciones. El 9 de noviembre de 2010, la parte recurrida presentó su oposición. Con el beneficio de la comparecencia de las par-tes, estamos listos para resolver.
*841 II
A. Los contornos del contrato de opción en nuestro or-denamiento jurídico han sido delineados por la jurispruden-cia, debido a que en el Código Civil no existen normas al respecto. Ante tal omisión, hemos definido el contrato de opción como “el ‘convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (lla-mada optante), por tiempo fijo y en determinadas condicio-nes, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal’ ”. P.D.C.M. Assoc, v. Najul Bez, 174 D.P.R. 716, 724 (2008), citando a Mayagüez Hilton Corp. v. Betancourt, 156 D.P.R. 234, 246 (2002); S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713, 722 (2001); Atocha Thom McAn, Inc. v. Registrador, 123 D.P.R. 571, 583 (1989). Esta definición contiene los elementos esenciales del contrato de opción. Mayagüez Hilton Corp. v. Betancourt, supra, pág. 246. Véase, también, J. Castán Tobeñas, Derecho Civil español, común y foral, 15ta ed., Madrid, Ed. Reus, 1993, T. IV, pág. 50.
El referido contrato otorga al optante la facultad de de-terminar, en el plazo concedido, si perfecciona el contrato definitivo, es decir, el contrato por el cual optó. Por ello, hemos acogido las expresiones del tratadista Puig Brutau a los efectos de que “no se opta por optar, sino que la opción es la posibilidad de perfeccionar un contrato previamente delimitado”. J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 50. Asimismo, el optatario está obligado a no frustrar la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción está vigente. Mayagüez Hilton Corp. v. Betancourt, supra, pág. 250; Castán Tobeñas, op. cit, págs. 54r-55. Si se tratase de una opción de compra-venta, ello significaría cuidar la propiedad y mantenerla fuera del mercado para que ningún tercero pueda adquirirla.
*842 Como norma general, el optante puede ejercer su dere-cho de opción simplemente notificando al optatario su vo-luntad de perfeccionar el convenio por el cual optó. Maya-güez Hilton Corp. v. Betancourt, supra, pág. 246. Véase, además, Puig Brutau, op. cit., pág. 57 (“La declaración del optante tiene el carácter unilateral y recepticia, no sujeta a forma expresa, pero tendrá que constar de manera fehaciente”). No obstante, ese derecho queda extinguido con su renuncia, o si transcurre el plazo concedido sin que el optante ejerza la opción, se estima entonces caducado. Mayagüez Hilton Corp. v. Betancourt, supra, pág. 249.
De otra parte, si la opción se ejerce en el plazo acordado, el contrato de opción queda extinguido y a su vez se per-fecciona el contrato aceptado, según haya sido previamente delimitado. Id. Desde entonces, y no antes, las partes están obligadas a satisfacer sus respectivas prestaciones mediante el contrato definitivo. Véase Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 809-810 (1975), citando la Sentencia del Tribunal Supremo de España de 23 de marzo de 1945 (“las recíprocas obligaciones ..., sobre esta base, han de exigirse después, pero no precisamente en el plazo establecido que atañe solo a la necesidad de formalizar la aceptación en su transcurso”).
B. Ahora bien, hemos reconocido que las normas gene-rales sobre las obligaciones y los contratos aplican al con-trato de opción. Rosa Valentín v. Vázquez Lozada, supra, pág. 804; Pérez v. Sampedro, 86 D.P.R. 526, 529 (1962). Véase, además, Puig Brutau, op. cit., pág. 49. Por ello, rige aquí también el principio de libertad de contratación o au-tonomía de la voluntad contractual, según el cual las par-tes pueden pactar las cláusulas y condiciones que estimen convenientes mientras no contravengan las leyes, la moral ni el orden público. 31 L.P.R.A. sec. 3372; Alvarez v. Rivera, 165 D.P.R. 1, 17 (2005); Vélez v. Izquierdo, 162 D.P.R. 88, 98 (2004); S.L.G. Irizarry v. S.L.G. García; supra, págs. 724-725; Trinidad v. Chade, 153 D.P.R. 280, 289 (2001); *843 Arthur Young & Co. v. Vega III, 136 D.P.R. 157, 169-170 (1994); Plaza del Rey, Inc. v. Registrador, 133 D.P.R. 188, 192-193 (1993). Una vez las partes prestan su consenti-miento, quedan entonces vinculadas por los términos del contrato, siendo este la ley entre las partes. 31 L.P.R.A. sec. 2994; Constructora Bauzá, Inc. v. García López, 129 D.P.R. 579, 593 (1991); Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345 (1984).
Siguiendo estos principios, fiemos señalado que “el al-cance de la opción aludida no se puede fijar sin tomar en cuenta el contenido específico que en [el] contrato se le imparte”. Zeta Enterprises, Inc. v. E.L.A., 145 D.P.R. 1, 10 (1998). Así, ya hemos reconocido la posibilidad de que las partes convengan que el derecho de opción esté supeditado al cumplimiento de ciertas condiciones. Id. Véase, además, Mayagüez Hilton Corp. v. Betancourt, supra. En estos ca-sos, aunque “[u]na opción típica implica que el poseedor del derecho tiene la iniciativa de decidir” si se celebrará el con-trato definitivo, en realidad el optante “no dispone de un ámbito ilimitado de voluntariedad”. Zeta Enterprises, Inc. v. E.L.A., supra, pág. 10. Vemos, pues, que se trata de “dis-posiciones [que] cualifican el ámbito de la opción, conforme a la voluntad de las partes contratantes”. Id.
Tras examinar estas normas, veamos ahora las alega-ciones de las partes.
h-i I — I HH
Las partes del caso de autos coinciden en que celebraron un contrato de opción en el cual los peticionarios (optata-rios) concedieron a los recurridos (optantes) la facultad ex-clusiva de decidir si adquirían un inmueble comercial, por el precio convenido de $130,000. Asimismo, están de acuerdo en que el período de opción tuvo una vigencia de treinta días a partir de la firma del contrato de opción. Empero, las partes tienen diferencias respecto a si el refe- *844 rido derecho de opción fue ejercitado propiamente antes de que el plazo de la opción caducara.
Concretamente, los recurridos sostienen que los peticio-narios sabían de la intención de aquéllos de adquirir la propiedad y las gestiones que realizaban en una institu-ción bancaria para obtener el financiamiento de la compra-venta, todo ello en el plazo de treinta días concedido. Por lo tanto, afirman los optantes, al comunicar su voluntad a los optatarios ejercieron su derecho de opción, sin que fuera necesario realizar ningún acto ulterior. De otro lado, los peticionarios arguyen que en este caso en particular no era suficiente que los optantes comunicaran la intención de comprar el inmueble para que se entendiera ejercido el de-recho de opción, ya que el contrato suscrito por las partes delimitaba cómo se debía ejercer ese derecho.
La controversia suscitada entre los contratantes con-cierne la forma cómo se ejerce el derecho de opción. El núcleo de la disputa gira en torno a las supuestas restric-ciones que las partes incluyeron en el contrato de opción respecto a como los optantes podían consumar ese contrato. En otras palabras, tratamos aquí con la posibili-dad de que las partes convengan métodos específicos para el ejercicio de la opción. Al percatarnos de que no existe en nuestro acervo jurisprudencial normas que atiendan direc-tamente este asunto, estimamos apropiado examinar bre-vemente la doctrina civilista.
A. Como mencionáramos, en el ámbito de los contratos de opción las partes gozan de plena libertad para diseñar convenios que atiendan adecuadamente sus necesidades e intereses, siempre y cuando no violen la ley, la moral ni el orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Véase M.J. Godreau Robles, La Opción de Compra en Puerto Rico, 53 Rev. Jur. U.P.R. 563, 577 (1984) (“En la configuración de sus relaciones económicas, las partes que suelen recurrir a estos contratos preliminares operan den-tro del ámbito de la autonomía de la voluntad como gene- *845 radora de las obligaciones. Son las partes quienes definen los límites de sus respectivas responsabilidades. De no me-diar circunstancias opresivas o violatorias de la buena fe, no hay por qué buscar en estos contratos resultados distin-tos a los que razonablemente puedan derivarse de la fina-lidad económica que persiguen los contratantes”)- La ma-yoría de las veces, los sujetos involucrados en un contrato de opción de compraventa oneroso acuerdan que el optata-rio mantendrá abierta su oferta de venta durante cierto plazo, en contraprestación a una suma de dinero que brinda el optante, comúnmente llamada “prima”. Desde entonces queda perfeccionado el referido contrato y el op-tante —mientras le asiste la facultad de ejercer la opción— no tiene ninguna obligación que satisfacer.
No obstante, la doctrina civilista ha reconocido que nada impide a las partes arribar a otros resultados que podrían considerarse atípicos. Véase J.Á. Torres Lana, Contrato y derecho de opción, 2da ed., Madrid, Ed. Trivium, 1987, pág. 153 (“las partes, al amparo una vez más del principio de autonomía de la voluntad, pueden configu-rar a su arbitrio la o las obligaciones que deba el optante cumplir, aunque en la práctica se detectará, en una mayo-ría abrumadora de ocasiones, que esta obligación consiste en el pago de una suma de dinero”). Por ejemplo, más allá de poder requerir el cumplimiento de ciertas condiciones previo al ejercicio de la opción, como las examinadas en Zeta Enterprises, Inc. v. E.L.A., supra, y en Mayagüez Hilton Corp. v. Betancourt, supra, varios académicos han afir-mado que las partes del contrato de opción de compraventa podrían acordar que el ejercicio de la opción venga acom-pañado del pago —parcial o total— del precio de la propie-dad objeto de venta.
A esos efectos, la profesora Sanciñena Asurmendi co-menta que los contratantes pueden incluir en el acuerdo de la opción de compra cláusulas que exijan que el optante ejecute ciertos actos simultáneos al ejercicio de la opción,
*846 de forma tal que de, no realizarse, se estimará como no ejercido el derecho de opción. C. Sanciñena Asurmendi, La Opción de Compra, Madrid, Ed. Dykinson, 2003, pág. 220. Por ello concluye que “[c]uando en el contrato de opción de compra, las partes convengan la necesidad de pagar el pre-cio de la compraventa en el momento de ejercicio de la opción de compra, si el optante no realiza el ofrecimiento o no lo consigna, se entenderá que la opción no se ejerció en forma, aunque se haya ejercido en tiempo”.” Id., pág. 221. Véase, también, Puig Brutau, op. cit., pág. 61 (“Con el ejer-cicio del derecho de opción, el optante perfecciona la com-praventa proyectada, la cual queda pendiente de consuma-ción, sin perjuicio de que las partes hayan dejado establecido que en el momento de manifestar afirmativa-mente la opción el comprador, deba entregar o depositar, en todo o en parte, el precio convenido”). (Enfasis en el original suprimido y énfasis suplido.)
Ante la novedad del asunto que hoy se nos plantea, re-sulta particularmente persuasiva la abundante jurispru-dencia civilista producida por el Tribunal Supremo de España. Hemos apreciado que ese Foro cuenta con una doctrina robusta, reiterada constantemente, que sanciona de manera positiva la libertad y autonomía de la cual go-zan las partes del contrato de opción para incluir en él aquellas exigencias que consideren adecuadas respecto a la forma en que se deberá ejercer el derecho de opción por el optante. Al aprobar este tipo de acuerdo, el Tribunal Supremo español ha expresado que, en ocasiones, la mera declaración de voluntad no es suficiente para ejercer la op-ción:
Tal ejercicio no basta por s[í] mismo cuando se ha convenido que ha de ir acompañado de pago del precio acordado para la compraventa, tanto total como en forma parcial. En el caso de autos ha quedado suficientemente probado que la recurrente no realizó pago ni desembolso alguno, conforme a los términos del contrato, con lo cual resulta que llevó a cabo un despliegue de voluntad incompleto y contradictorio del negocio, por lo que *847 la opción perdió toda su eficacia, ya que se carecía de faculta-des para postergar el desembolso del precio a que se había comprometido y cuyo cumplimiento era factible, conforme queda sentado. En consecuencia, la opción ha de tenerse por caducada .... STS Núm. 941 de 2 de noviembre de 1995.
Asimismo, el citado Tribunal ha concluido que un con-trato de opción en el cual se pacta cómo podrá llevarse a cabo el ejercicio de la opción —por ejemplo, requiriendo del optante el pago simultáneo del precio de la compraventa—
... ni contradice la naturaleza del contrato de opción, ni su sometimiento a las normas generales de las obligaciones y contratos, dado el principio de autonomía de la voluntad y la facultad del [concedente], prominente u optatorio de poner condiciones al optante para su aceptación, lo que tampoco está en pugna con la libertad de juicio y criterio de éste, ni con la tradicional y vigente jurisprudencia ..., que tiene un carácter general, necesitado de las especificaciones de cada caso con-creto, pues la oferta no siempre se manifiesta de modo simple, sino con condicionantes elevados por el oferente a la cualidad de esenciales, de manera tal que si no se cumplen de modo estricto no se produce el concurso de la oferta y la aceptación .... STS Núm. 684 de 17 de noviembre de 1986.(2)
B. Consideramos que la norma expuesta es el desen-lace forzoso del principio de la autonomía de la voluntad aplicado a los contratos de opción. Esa autonomía creadora *848 gestó en su momento derechos atípicos como el derecho de superficie y el propio derecho de opción, ausentes en nues-tro Código Civil. La libertad y flexibilidad que este otorga en el Artículo 1207, 31 L.P.R.A. sec. 3372, para que los sujetos desarrollen convenios ajustados a sus intereses, li-mitados por el llamado a respetar la ley, la moral y el orden público, permite que las relaciones contractuales en nues-tra jurisdicción evolucionen y respondan de forma ade-cuada a las exigencias que los nuevos tiempos presentan. Son las partes contratantes las que mejor pueden decidir, mediante diálogos y negociaciones, cómo deben configu-rarse sus obligaciones.
Todo ello nos lleva a concluir que al amparo del artículo 1207 del Código Civil, supra, las partes de un contrato de opción pueden establecer no solo el plazo durante el cual estará vigente la opción, sino cómo deberá ejercerse el de-recho de opción en el plazo. Los medios o las restricciones, que así se diseñen, deben ser claros y conservar el carácter unilateral del ejercicio de la opción. Es decir, cualquier acto que se deba realizar junto a la tradicional declaración de voluntad para ejercer la opción, según sea acordado por las partes, siempre tiene que depender del arbitrio exclusivo del optante. De manera que el ejercicio de la opción no puede supeditarse a eventos que requieran la participación del optatario, ya que entonces se destruiría el carácter unilateral del ejercicio; característica esencial del contrato de opción.
Ante un despliegue de la voluntad para ejercer la op-ción, que no satisfaga el pacto respecto a la forma como el derecho de opción debió ser ejercido, se debe considerar un acto ineficaz por lo cual no perfeccionará el contrato definitivo. Sin embargo, mientras continúe transcurriendo el plazo de la opción, el optante conservará su derecho y podrá rectificar su conducta a los efectos de ejercer la op-ción cumpliendo con lo acordado por las partes. Véase J. Taima Charles, El Contrato de Opción, Barcelona, Ed. *849 Bosch, 1996, pág. 256. Si venciera el plazo sin que el op-tante ejerza efectivamente la opción en la forma como las partes lo estipularon, su derecho habrá de caducar.
Finalmente, en ausencia de un pacto sobre la forma de ejercer el derecho de opción, debe bastar con la mera decla-ración de voluntad por parte del optante para que se con-suma el contrato de opción y, a su vez, se perfeccione el contrato definitivo por el cual se optó. En estos supuestos el optatario está vedado de requerir cualquier acto no pre-visto en el contrato de opción para que el optante pueda ejercer su derecho. Véase Torres Lana, op. cit., pág. 262.
Contando ya con las normas aplicables, pasemos ahora a evaluar el contrato de opción suscrito por las partes en el caso de autos. Para ello, debemos examinarlo siguiendo las reglas de interpretación dispuestas en nuestro Código Civil.(3)
IV
La controversia suscitada entre las partes solo requiere que evaluemos si los contratantes delimitaron una forma específica en la cual se debía ejercer el derecho de opción, alejándose así de la norma general referente al ejercicio de la opción mediante la mera declaración de voluntad.
A esos fines, una lectura integrada del “Contrato de op-ción a compra” refleja que el término de treinta días, acor- *850 dado como plazo de la opción por las partes, únicamente se estableció en el tercer inciso de las “Cláusulas y Condiciones”. En esa misma cláusula las partes acordaron el precio de la venta y cómo este sería desembolsado: pri-mero, el pago de una prima de $3,000 al firmarse el con-trato de opción y, segundo, el pago del remanente del precio “en o antes de treinta (30) días a partir del día [de la firma del contrato de opción]”. Id. Esta instrucción para realizar el pago del precio de la venta en treinta días, es la misma —y la única— que creó el plazo del derecho de opción. Por lo tanto resulta evidente que, al amparo de la estipulación del contrato, el término para el ejercicio de la opción quedó entrelazado al pago del precio de la compraventa. No se acordó meramente un plazo para ejercer la opción, se pactó un plazo de treinta días para que el optante ejerciera la opción entregando al optatario $127,000. Este acuerdo, conforme a la autonomía de la voluntad de las partes, re-guló la forma en que se habría de ejercer el derecho de opción. Siendo válido, los contratantes estaban obligados a cumplirlo cabalmente.
De otra parte, en la cláusula sexta del contrato se con-vino que “[d]e vencerse el término de esta opción y no fir-marse la escritura, este contrato quedará nulo y LA PARTE VENDEDORA queda en libertad de vender la pro-piedad a otro posible comprador”. Contrato de opción a compra, pág. 2, Apéndice de la Petición de certiorari, pág. 141. La parte peticionaria sostiene que la cláusula citada tuvo el efecto de condicionar el ejercicio de la opción a que se otorgara la escritura de compraventa. A su vez, alega que tras transcurrir el término de treinta días de la opción sin que se otorgara la escritura, la parte recurrida no ejer-ció su derecho de opción en tiempo y forma. En este ex-tremo, no le asiste la razón a los peticionarios.
Según discutimos previamente, aunque las partes en un contrato de opción disfrutan de libertad para diseñar el tiempo y la forma en que el derecho de opción podrá ser ejercido, los mecanismos que tengan por bien deberán con- *851 servar las características esenciales del derecho de opción. En lo pertinente al caso de autos, la parte peticionaria no puede pretender leer la cláusula sexta como ahora pre-tende, pues ello significaría sujetar el ejercicio de la opción a un evento que requiere no solo un acto del optante, sino también la participación activa del optatario: la escritura de compraventa. En otras palabras, la consumación del contrato de opción y, por ende, la perfección del contrato definitivo de compraventa dependería de la voluntad y el consentimiento de ambas partes, no ya del optante exclusivamente. Ello, sin duda, es contrario a la figura de la opción, la cual se distingue por brindar únicamente al optante la facultad de ejercer el derecho de opción. Conse-cuentemente, la parte peticionaria no podía exigir el otor-gamiento de esa escritura como condicionante al reconoci-miento del ejercicio efectivo del derecho de opción.
A pesar de ello, visto todo lo anterior y conforme a la doctrina enunciada, debemos concluir que las partes inclu-yeron en el contrato de opción reglas concernientes a la forma como se ejercería el derecho de opción. Específica-mente, convinieron que, en caso de que los recurridos deci-dieran adquirir la propiedad objeto del contrato, tendrían que comunicar esa voluntad entregando el precio de la compraventa —restando la prima— en el plazo de treinta días a partir de la fecha cuando suscribieron el contrato de opción. Por ello, erró el foro apelativo intermedio al razo-nar que bastaba informar la intención de adquirir la pro-piedad para que se estimara ejercida la opción.
Según fue probado en los foros recurridos, los optantes no pusieron a disposición de los optatarios el precio de la compraventa ($127,000) en el plazo de la opción. Siendo así, independientemente de que la voluntad de los optantes respecto a la adquisición de la propiedad hubiera llegado a los optatarios a tiempo, la opción no fue ejercida efectiva-mente debido a que se incumplió el contrato de opción en cuanto a la forma del ejercicio de la opción. Véase Olazábal *852 v. U.S. Fidelity, etc., 103 D.P.R. 448, 462 (1975) (“Los tribunales de justicia no pueden relevar a una parte de cum-plir con lo que se obligó a hacer mediante contrato cuando dicho contrato es legal y válido y no contiene vicio alguno”).
En conclusión, trascurrido el término de la opción sin que esta se ejerciera en tiempo y forma por los recurridos, caducó. Desde entonces la parte peticionaria podía poner en el mercado la propiedad sobre la cual se había optado y ofrecerla a cualquier otro posible comprador, como en efecto hizo.

 Aun cuando la sentencia del foro apelativo intermedio dispone que modifica la sentencia recurrida, al acoger la causa de acción que el foro primario había des-estimado, el Tribunal de Apelaciones realmente revocó la sentencia dictada por el Tribunal de Primera Instancia.

 Otras de las sentencias del Tribunal Supremo de España que muestran la referida doctrina son: STS Núm. 552 de 17 de septiembre de 2010 (“La libertad de pactos consiente que el ejercicio de la opción se supedite al simultáneo ofrecimiento del pago, o a su consignación, ... en cuyo caso tal ofrecimiento o pago opera como requisito o condición ineludible para el ejercicio de la opción”); STS Núm. 927 de 11 de octubre de 2002 (“nos hallamos ante una excepción a la regla general según la cual no es exigible la entrega de la cosa ni el pago del precio para que el ejercicio de la opción dé lugar a la perfección del contrato de compraventa”); STS de 24 de junio de 1993 (“existirán casos concretos en los que su ejercicio dependa de la simple manifestación de voluntad, sin necesidad de poner el precio a disposición del vende-dor hasta que se otorgue la escritura, pero en otros, como ocurre en el que nos ocupa, ha de pagarse ‘el día que se ejercitará la opción’, extremo obligatorio a virtud del ‘pacta sunt servanda’...”). Véanse, además: STS Núm. 752 de 5 de julio de 2006; STS Núm. 865 de 27 de octubre de 2005; STS Núm. 467 de 19 de mayo de 2003; STS Núm. 712 de 6 de julio de 2001; STS Núm. 112 de 14 de febrero de 1997; STS Núm. 116 de 25 de febrero de 1996; STS de 3 de febrero de 1992; STS de 12 de junio de 1992; STS de 1 de diciembre de 1992; STS de 6 de abril de 1987; STS de 7 de julio de 1986; STS de 6 de febrero de 1981.

 Los Artículos 1233 y 1235-1237 del Código Civil disponen:
“Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.
“Si las palabras parecieren contrarias a la intención evidente de los contratan-tes, prevalecerá ésta sobre aquéllas.” 31 L.P.R.A. see. 3471.
“Cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar.” 31 L.P.R.A. see. 3473.
“Si alguna cláusula de los contratos admitiere diversos sentidos, deberá enten-derse en el más adecuado para que produzca efecto.” 31 L.P.R.A. see. 3474.
“Las cláusulas de los contratos deberán interpretarse las unas por las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de todas.” 31 L.P.R.A. see. 3475.